UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- ✕
STUART STRENGER,

              Plaintiff,                 CASE NO.: _____

     -against-

HFF, INC., MARK D. GIBSON, DEBORAH H.
MCANENY,   SUSAN   P.   MCGALLA,
GEORGE L. MILES, JR., MORGAN K.
O'BRIEN, LENORE M. SULLIVAN, JOE B.
THORNTON,   JR.,  and   STEVEN  E.
WHEELER,

              Defendants.
--------------------------------------- ✕

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

       Plaintiff Stuart Strenger ("Plaintiff"), on behalf of himself, by and through his attorneys,

alleges the following upon information and belief, including investigation of counsel and review

of publicly-available information, except as to those allegations pertaining to Plaintiff, which

are alleged upon personal knowledge:

**NATURE OF THE ACTION**

       1.      This is an action brought by Plaintiff against HFF, Inc. ("HFF" or the "Company")

and the members of the Company's board of directors (collectively referred to as the "Board" or

the "Individual Defendants" and, together with HFF, the "Defendants") for their violations of

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§

78n(a), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger of

Jones Lang LaSalle Incorporated ("JLL") with HFF.

       2.      On March 18, 2019, HFF and JLL entered into an Agreement and Plan of Merger

(the "Merger Agreement"), pursuant to which a wholly owned subsidiary of JLL will merge with and into HFF, with HFF surviving the merger as a wholly owned subsidiary of JLL (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each outstanding share of HFF common stock will be converted into the right to receive $24.63 in cash and .1505 shares of JLL common stock (the "Merger Consideration").

4.      On May 31, 2019, in order to convince HFF's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading DEFM14A Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by and financial projections utilized by HFF's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) the fees to be received by Morgan Stanley.

6.      The annual meeting of the Company's shareholders to vote on the Proposed Transaction is quickly approaching on July 1, 2019.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the annual meeting of HFF shareholders so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and HFF's public common shareholders sufficiently in advance of the annual meeting of the

Company's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

<u>**JURISDICTION AND VENUE**</u>

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Indeed, HFF maintains an office at 45 Rockefeller Plaza, and its common stock is listed and traded on the New York Stock Exchange, which is also headquartered in this District. Several meetings related to the Merger also took place in this District. Moreover, HFF has retained D.F. King & Co., Inc. as its Proxy Solicitor, which is located in this District at 48 Wall Street, New

York, NY 10005.

## **PARTIES**

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of HFF common stock.

12.     Defendant HFF is a Delaware corporation that maintains offices across the country, including in New York, New York.  HFF's common shares are traded on the New York Stock Exchange under the ticker symbol "HF."

13.     Defendant Mark D. Gibson is, and has been at all relevant times, a director of the Company.

14.     Defendant Deborah H. McAneny is, and has been at all relevant times, a director of the Company.

15.     Defendant Susan P. McGalla is, and has been at all relevant times, a director of the Company.

16.     Defendant George L. Miles, Jr. is, and has been at all relevant times, a director of the Company.

17.     Defendant Morgan K. O'Brien is, and has been at all relevant times, a director of the Company.

18.     Defendant Lenore M. Sullivan is, and has been at all relevant times, a director of the Company.

19.     Defendant Joe B. Thornton, Jr. is, and has been at all relevant times, a director of the Company.

20.     Defendant Steven E. Wheeler is, and has been at all relevant times, a director of the Company.

4

21.    The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with HFF, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.    HFF is a holding company. The Company holds the partnership interests in Holliday Fenoglio Fowler, L.P. and HFF Securities L.P., held through the subsidiary HFF Partnership Holdings, LLC, and all of the outstanding shares of Holliday GP Corp. The Company operates through the commercial real estate financial intermediary segment. It offers debt placement, investment sales, distressed debt and real estate owned advisory services, equity placement, investment banking and advisory services, loan sales and commercial loan servicing. The Company provides commercial real estate and capital markets services to both the consumers and provides capital in the commercial real estate industry.

23.    JLL is a financial and professional services company specializing in real estate. The Company offers integrated services on a local, regional and global basis to owner, occupier, investor and developer clients seeking increased value by owning, occupying, or investing in real estate.  Its real estate services include agency leasing, capital markets, corporate finance, energy and sustainability services, investment management, lease administration, logistics and supply-chain management, mortgage origination and servicing, real estate investment banking/merchant banking, tenant representation, transaction management, and value recovery and receivership services.

24.    On March 18, 2019, the Board caused the Company to enter into the Merger Agreement.

25.    Pursuant to the terms of the Merger Agreement, each outstanding share of HFF

common stock will be converted into the right to receive $24.63 in cash and .1505 shares of JLL common stock.

26. On March 19, 2019, HFF and JLL issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

**JLL to Accelerate Growth in Capital Markets Business Through Acquisition of HFF**

- *HFF capabilities will significantly bolster JLL's full-service Capital Markets business*
- *Combination will create an industry-leading Capital Market platform*

**CHICAGO and DALLAS, March 19, 2019** /PRNewswire/ -- Jones Lang LaSalle Incorporated (NYSE: JLL) and HFF, Inc. (NYSE: HF) today announced that they have entered into a definitive agreement under which JLL will acquire all the outstanding shares of HFF in a cash and stock transaction with an equity value of approximately $2 billion. The transaction has been unanimously approved by the boards of directors of both companies.

HFF is one of the largest and most successful commercial real estate capital markets intermediaries in the U.S., marked by decades-long relationships with clients, a talented leadership team and best-inclass capital markets advisors. Since 1998, HFF has closed more than $800 billion in over 27,000 transactions, achieving record revenue in 2018 of more than $650 million. Mark Gibson, CEO of HFF, will join JLL as CEO, Capital Markets, Americas and CoChair of its Global Capital Markets Board.

"Increasing the scale of our Capital Markets business is one of the key priorities in our Beyond strategic vision to drive long-term sustainable and profitable growth. The combination with HFF provides a unique opportunity to accelerate growth and establish JLL as a leading capital markets intermediary, with outstanding capabilities," said Christian Ulbrich, Global CEO of JLL. "We have long admired HFF for its expertise and leading reputation in the industry, as well as its client-first culture of teamwork, ethics and excellence, which aligns with our own. I believe that combining our organizations will deliver a range of compelling benefits for our clients, employees and shareholders."

"This is a terrific transaction for our shareholders, providing them with an immediate cash payment and the opportunity to participate in the long-term value of the combined company," said Gibson. "In addition, we believe the combination with JLL will create a superior platform for our shareholders, clients and employees than either company would have independent of the other and will significantly accelerate our firm's strategic plan. JLL's team-oriented culture with the additional standards of high character and integrity are an excellent match with the HFF culture, which has been HFF's fundamental differentiator since its inception."

**Transaction Details**

Under the terms of the agreement, HFF shareholders will receive $24.63 in cash and 0.1505 JLL shares for each HFF share. Based on the closing price of JLL stock of $163.02 on March 18, 2019, the cash and stock consideration to be received by HFF shareholders at closing is valued at $49.16 per HFF share. The share price represents a premium of approximately 22 percent and 25 percent compared to the volume weighted average price of HFF over 60 and 90 trading days, respectively, and a premium of approximately 6 percent over the closing stock price on March 18, 2019 (before the positive impact of the $1.75 per share special dividend declared on January 31, 2019 and paid on February 27, 2019). Upon closing of the transaction, JLL shareholders are expected to own approximately 87 percent of the combined company, and HFF shareholders are expected to own approximately 13 percent. All seven Executive Committee members of HFF have agreed to vote their shares, representing 3 percent ownership of HFF, in favor of the transaction. Key HFF senior leaders and capital markets advisors have entered into 3-4 year commitments related to employment, non-competition and/or retention. Finally, JLL anticipates adding one of HFF's existing directors to JLL's Board of Directors effective as of the closing of the transaction.

JLL intends to fund the cash portion of the purchase price consideration with a combination of cash reserves and its existing syndicated credit facility. The combination is expected to deliver significant run-rate synergies, estimated at approximately $60 million over two to three years.

The transaction is expected to close in the third quarter of 2019, subject to HFF shareholder approval and customary closing conditions, including regulatory review. The transaction is not contingent upon receipt of financing.

**Compelling Strategic Rationale and Long-Term Value Creation**

Through this combination, JLL will significantly bolster its fullservice Capital Markets services to clients. The transaction will allow JLL to rapidly scale its U.S. Capital Markets presence, accelerate growth of its debt advisory business in Europe and Asia Pacific and drive increased operating efficiency globally.

HFF shareholders will receive attractive value for their HFF shares, combining an immediate cash element with the opportunity to participate in the future success and high growth potential of JLL. HFF shareholders will benefit from owning shares in a global organization with a variety of additional services to offer clients, including industry-leading agency leasing, property management, valuations and project management services.

The combination of JLL and HFF will create a platform that attracts, develops and retains the best talent in the industry. Additionally, the combination of the companies' complementary investments in technology will further strengthen JLL's digital capabilities, reinforcing its position as a digital leader with superior team connectivity, improved back-end processes and best-in-class client tools.

This acquisition is expected to create long-term strategic value for both JLL and HFF investors. It will be accretive to adjusted earnings per share in the first full financial year after completion and generate strong pro forma cash flow, allowing for consistent and timely deleveraging.

**Advisors**
JP Morgan is serving as exclusive financial advisor for JLL, and Sidley Austin LLP as legal counsel. Morgan Stanley & Co. LLC is acting as exclusive financial advisor for HFF, and Dechert LLP as legal counsel.

**The Proxy Omits Material Information**

27.    On May 31, 2019, Defendants caused a materially incomplete and misleading Proxy to be filed with the SEC and disseminated to the Company's shareholders.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

28.    First, the Proxy fails to disclose material information regarding the financial projections that Morgan Stanley relied on in conducting its financial analysis.  Specifically, the Proxy fails to disclose the projections for depreciation and amortization, stock-based compensation expense, initial recording of MSRs, and capital expenditures utilized to calculate unlevered free cash flow for HFF from 2020 through 2024. *See* Proxy at 227.  Further, the Proxy does not provide a description of the definition, inputs, or formula utilized to calculate the Adjusted EBITDA set forth in the JLL Street Forecasts, which is material because Adjusted EBITDA is a non-GAAP financial metric and thus subject to various unspecified "adjustments." *Id.*

29.    Second, the engagement letter between HFF and Morgan Stanley for Morgan Stanley's financial services in connection with the proposed merger stated that HFF was to pay

8

Morgan Stanley an "incentive fee" of approximately $4.1 million, which was payable at the sole discretion of HFF upon closing of the merger. *Id.* at 136. However, the Proxy fails to disclose what the parameters for receiving the "incentive fee" are. It is material for stockholders to have a complete understanding of the financial advisor's compensation and know precisely under what circumstances the advisor whose fairness opinion they are being asked to rely upon stands to receive millions of dollars in additional consideration.

30.     With respect to Morgan Stanley's *Precedent Premiums Paid Analysis*, the Proxy fails to disclose the premiums paid for each of the four precedent transactions chosen. *Id.* at 132.

31.     Similarly, with respect to Morgan Stanley's Precedent Multiples Analysis, the Proxy fails to disclose the individual multiples and the financial metrics used for each of the 21 transactions selected by Morgan Stanley. Id. at 133. The individual multiples and premiums are material, because without the information, shareholders are unable to assess whether the financial advisor applied reasonable ranges in connection with calculating an implied value per share.

32.     Lastly with respect to Morgan Stanley's analysis of the 5-year historical average ratios of AV to NTM adjusted EBITDA  and the 5-year historical average ratio of the price of a share of common stock to NTM estimated earnings per share, the Proxy fails to disclose the 5-year historical average ratios, and instead only discloses the respective reference ranges that Morgan Stanley decided to apply. *Id.* at 134-135.

33.     The individual multiples and premiums for each of these analyses are material, because without the information, shareholders are unable to assess whether Morgan Stanley applied reasonable ranges in connection with calculating implied values per share. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions,

bankers have significant leeway in choosing valuation ranges and inputs, and such choices "can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).

34.     Defendants' failure to provide the foregoing material information renders the corresponding incomplete "summaries" of Morgan Stanley's valuation analyses and the projections it utilized for such analyses materially incomplete and misleading. If a Proxy discloses valuation information, it must be complete and accurate.

35.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's shareholders, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the valuation analyses performed by and financial projections utilized by HFF's financial advisor, Morgan Stanley; and (ii) the fees to be received by Morgan Stanley.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common shareholders although they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy

is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board, HFF's management, HFF's outside legal counsel, and Morgan Stanley all reviewed and assessed financial projections for HFF, and further states that the Board considered the fairness opinion provided by Morgan Stanley and the assumptions made and matters considered in connection therewith, which included financial projections for HFF and JLL.  Further, the Individual Defendants were privy to and had knowledge of the projections for HFF and JLL and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

44.     HFF is also deemed negligent as a result of the Individual Defendants' negligence

in preparing and reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's shareholders.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of HFF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HFF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

      B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

      C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 10, 2019               **MONTEVERDE & ASSOCIATES PC**

                         */s/ Juan E. Monteverde*
                         Juan E. Monteverde (JM-8169)
                         The Empire State Building
                         350 Fifth Avenue, Suite 4405 New York, NY 10118
                         Tel:(212) 971-1341
                         Fax:(212) 202-7880
                         Email: jmonteverde@monteverdelaw.com

                         *Attorneys for Plaintiff*